## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON

**STEVEN J. TAYLOR,**

      **Plaintiff,**

v.                                                          Case No. 2:15-cv-16550

**WARDEN DAVID BALLARD,**
**MAJOR ROBERT RHODES,**
**SGT. VLADIMIR IOTOV, and**
**CORRECTIONAL OFFICER DUSTIN ROSE,**
**each in his individual capacity,**

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATION

This matter, which is proceeding on an Amended Complaint (ECF No. 8), is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are a Motion to Dismiss the initial Complaint filed by defendants Iotov and Rose (ECF No. 4), a Motion to Dismiss the initial Complaint filed by defendants Ballard and Rhodes (ECF No. 6), and a Motion to Dismiss the Amended Complaint filed by defendants Ballard and Rhodes (ECF No. 11). For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** each of these motions.

### THE DEFENDANTS' INITIAL MOTIONS TO DISMISS

The plaintiff filed his initial Complaint in the Circuit Court of Kanawha County, West Virginia on November 18, 2015. On December 29, 2015, the defendants removed

the case to this federal court, pursuant to 28 U.S.C. §§ 1331 and 1441, based upon the court's federal question jurisdiction. (ECF No. 1).

On January 5, 2016, defendants Iotov and Rose filed a Motion to Dismiss (ECF No. 4) seeking dismissal of the plaintiff's claims brought against them in their official capacities, which have now been abandoned in the Amended Complaint. Similarly, the Motion to Dismiss initially filed by defendants Ballard and Rhodes (ECF No. 6) challenged the claims against them in their official capacities and further asserted that the plaintiff's initial Complaint failed to state a plausible claim of supervisory liability against them.

However, on January 19, 2016, the plaintiff filed an Amended Complaint (ECF No. 8), which supersedes the initial Complaint, and which seeks relief against all of the defendants only in their individual capacities. On February 1, 2016, defendants Ballard and Rhodes filed a second Motion to Dismiss (ECF No. 11), which asserts that the plaintiff's Amended Complaint fails to state a plausible claim for relief against those defendants. Defendants Iotov and Rose filed an Answer to the Amended Complaint (ECF No. 10) and did not renew their Motion to Dismiss.

In light of the filing of the Amended Complaint (ECF No. 8), which abandons all official capacity claims, and the filing of the second Motion to Dismiss filed by defendants Ballard and Rhodes (ECF No. 11), which addresses their bases for dismissal of the Amended Complaint, the undersigned proposes that the presiding District Judge **FIND** that the initial Motions to Dismiss (ECF Nos. 4 and 6) are now moot. Accordingly, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY AS MOOT** the initial Motions to Dismiss (ECF Nos. 4 and 6).

## PLAINTIFF'S AMENDED COMPLAINT

The plaintiff's Amended Complaint (ECF No. 8) arises out of an alleged use of force against the plaintiff on February 14, 2015. Specifically, the Amended Complaint alleges that, on that date, the plaintiff (hereinafter "Taylor") was being housed in the Quilliams II unit, Pod 4, Cell 409, and had been experiencing problems with his toilet clogging, backing up and overflowing. (ECF No. 8 at 5, ¶ 6). Thus, he pushed his call button and defendants Rose and Iotov responded and shut off the water to his cell. (*Id.* at 6, ¶ 7). The officers discussed the problem with Taylor and told him that shutting the water off for a minute should stop the toilet from running. (*Id.*, ¶ 8). They subsequently turned the water back on and told Taylor that if he had any further problems to hit his call button. Taylor then asked for some cleaning supplies to clean his cell due to the toilet water on the floor and Rose and Iotov said they would bring him some supplies. (*Id.*, ¶ 9).

After approximately 20-25 minutes, when they had not returned with the supplies, Taylor pushed his call button "numerous times" to get the officers' attention, but received no response. (*Id.* ¶ 10). Taylor states that he was feeling nauseous and decided to flood his cell to expel the "noxious waste" that was all over his cell. (*Id.* at 7, ¶ 11). At that time, Iotov and Rose entered the pod and again shut off the water to Taylor's cell. (*Id.*, ¶¶ 12-13). Iotov then allegedly reached for a can of OC spray. (*Id.*, ¶ 13).

Taylor further alleges that he asked Iotov if he was going to spray him and Iotov said "Yes." At that point, defendant Rose allegedly stated "you can't spray him, he isn't doing anything wrong" and allegedly grabbed Iotov's arm. (*Id.*, ¶ 14). Nevertheless, Iotov allegedly took an 18-ounce can of "Cell Buster" and sprayed "about two 5-6 second burst[s]" into Taylor's cell, and Rose did nothing to stop him. (*Id.*, ¶ 15). Taylor alleges

3

that he remained in his cell for approximately 10-15 minutes before other officers came with a video camera and asked if he wanted to be decontaminated. Taylor allegedly requested that a nurse come to his cell because, after being pepper sprayed, he was afraid to come out of his cell to seek medical treatment for fear of being "assaulted" again. (*Id.* at 8, ¶¶ 17-18). Taylor alleges that he suffered chemical burns and lack of oxygen. (*Id.*, ¶ 19). Based upon this alleged conduct, Counts I and II of the Amended Complaint allege use of excessive force by defendant Iotov and failure to intervene by defendant Rose, in violation of the Eighth and Fourteenth Amendments of the United States Constitution. (*Id.* at 10-12, ¶¶ 25-32). As stated above, those defendants have filed an Answer to the Amended Complaint and discovery shall proceed with regard to those claims.

Concerning defendants Ballard and Rhodes (the "Supervisory Defendants"), Count III of the Amended Complaint alleges that, as supervisors of defendants Iotov and Rose, they "instructed, allowed, approved, and permitted their subordinates, including defendants Iotov and Rose, to use unnecessary and excessive force against the plaintiff multiple times, not for the purpose of restraint or discipline, but for the malicious and sadistic purpose to punish and to harm him." (*Id.* at 12, ¶ 35). Taylor further claims that the Supervisory Defendants knew or should have known of the pervasive and widespread abuse of inmates at MOCC, and have failed to properly investigate, supervise and discipline their subordinates, which posed a substantial risk of harm to Taylor and proximately caused his injuries. (*Id.* at 13, ¶¶ 36-39). Taylor further alleges that the conduct of the Supervisory Defendants was objectively unreasonable and violated Taylor's clearly-established rights under Eighth and Fourteenth Amendments.

## **STANDARD OF REVIEW**

The Supervisory Defendants' motion asserts that the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against them, and should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true, and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.* at 678.

The Supervisory Defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## ANALYSIS

The seminal issue in this case is whether the defendants' conduct violated Taylor's right to be free from cruel and unusual punishment as guaranteed by the Eighth Amendment of the United States Constitution. In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" [Emphasis added]. This is a low standard. The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.* at 833.

In *Hudson v. McMillan*, 503 U.S. 1 (1992), the Supreme Court held that use of excessive physical force against an inmate may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. The Court held "that whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [v. Albers*, 475 U.S. 312 (1986)]: whether force was applied in a good-faith effort to maintain

or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 6. The *Whitley* Court noted that:

> [I]n making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance, prison officials undoubtedly must take into account the very real threats the unrest presents to inmates and prison staff, in addition to the possible harms to inmates against whom force might be used.

475 U.S. at 320. The Supreme Court has further emphasized that, "prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. at 547). Thus, the Court stated that "[u]nless it appears that the evidence viewed in the light most favorable to the plaintiff will support a reliable inference of wantonness in the infliction of pain, under the standard we have described, the case should not go to the jury." *Id.* at 322.

In *Whitley*, the Court set forth the following five factors that must be weighed in determining whether force was applied in a good faith effort to maintain or restore order, or whether it was done so maliciously and sadistically for the very purpose of causing harm: (1) the need for application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury; (4) the threat reasonably perceived by the responsible official; and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996). (ECF No. 104 at 13). This is clearly-established law of which a reasonable correctional officer or prison administrator would know, and is the measure by which the conduct of the officer(s) alleged to have used force against Taylor will be judged.

In *Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994), the Court held that supervisors may be liable for the actions of their subordinates where the supervisor, by his own conduct, was deliberately indifferent to, or tacitly authorized or approved prior constitutional violations. Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." 13 F.3d at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)). In *Shaw*, the Fourth Circuit discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and

3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799. However, in *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. *Id.* at 838.

The Supervisory Defendants' Memorandum of Law emphasizes that government officials may not be held liable for unconstitutional conduct of their subordinates under

a theory of *respondeat superior* and must allege that each defendant's own individual actions violated the Constitution. *Iqbal*, 556 U.S. at 675-76; *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). (ECF No. 12 at 5). Addressing the *Shaw* elements in relation to Taylor's case, the Memorandum of Law asserts that Taylor has not alleged and cannot establish that either of these supervisors "had actual knowledge that the other alleged Defendants were engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to him." (*Id.* at 6). The Supervisory Defendants further assert that, while the second element concerning "deliberate indifference or tacit authorization of the alleged offensive practices" may be demonstrated by "continued inaction in the face of documented widespread abuses," *Shaw*, 13 F.3d at 799, the plaintiff herein has pled only conclusory allegations that amount to no more than a recital of the legal elements of a supervisory liability claim, and do not establish a plausible causal link between the supervisors' conduct and the plaintiff's alleged Constitutional injuries. (*Id.* at 6-7).

The Supervisory Defendants further assert that they are entitled to qualified immunity on Taylor's claims. (*Id.* at 8). Government officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts

9

alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. *Id.* If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. *Id.*[1] The Supervisory Defendants' Memorandum of Law asserts that "Plaintiff cannot satisfy the first prong of the above standard as he has not alleged any factual allegations against these Defendants." (ECF No. 12 at 8).

On February 29, 2016, Taylor filed a Response in Opposition to the Supervisory Defendants' Motion to Dismiss (ECF No. 13), which reiterates his position that defendants Ballard and Rhodes had actual or constructive knowledge that their subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to him and "actually encouraged it." (*Id.* at 2). His Response states in pertinent part:

> Plaintiff argues that not only should defendants Ballard and Rhodes have known excessive force was being used by subordinates but actually encouraged it with certain "off" the books policies (see Exhibits LL, MM, OO and PP). Plaintiff's excessive force claim is not the first brought to the attention of the administration, and when reported to the attention of Defendant David Ballard it was ignored, as have many before this excessive force incident. Defendant Ballard and Rhodes actually gave his subordinates free reign when it came to use of force on inmates in the segregation units, and have "<u>directly</u>" encouraged and created an atmosphere where use of force is the norm and have dubbed this "Martial Law."

\* \* \*

---

1 In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court noted that the doctrine of qualified immunity "balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." 555 U.S. at 230.

10

> The reason this case is important is because the exhibits provided goes [sic; go] against all those [*Whitley*] factors and take all Eighth Amendment rights away from segregation units. Telling subordinates <u>not</u> to temper the severity of force used on seg inmates; if force is used <u>always</u> place inmates on BMP (Behavior Management Program). That is <u>three</u> separate punishments for a single incident that an inmate does regardless of the severity of infraction.

(*Id.* at 2-3).

Taylor's Response further asserts that the Supervisory Defendants are not entitled to qualified immunity because they ignored or condoned obvious constitutional violations. (*Id.* at 4-6). He further asserts that "[a]s supervisory officials, defendants Ballard and Rhodes were well aware that the actions they were condoning violated plaintiff's Eighth Amendment rights . . . Indeed this case presents government misconduct so egregious that any reasonable official would have known that it violates the Constitution . . . ." (*Id.* at 6). The Supervisory Defendants did not file a Reply brief.

In *Shaw*, the Fourth Circuit held that "liability is ultimately determined by pinpointing the person/persons in the decision making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." 13 F.3d at 799. A discussion by the United States Court of Appeals for the Tenth Circuit of circumstances in which a supervisor may be held liable for the allegedly unconstitutional conduct of his or her subordinates in the wake of *Iqbal* is particularly instructive. In *Dodds v. Richardson*, the court found as follows:

> § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected," that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . ." [citation omitted]; *see also Davis v. City of Aurora*, 705 F.Supp.2d 1243, 1263–64 (D. Colo. 2010) ("The exercise of control

11

which may create the "affirmative link" does not need to be the sort of on-the-ground, moment-to-moment control that defendants appear to suggest. Rather, the establishment or utilization of an unconstitutional policy or custom can serve as the supervisor's "affirmative link" to the constitutional violation.... [W]here an official with policymaking authority creates, actively endorses, or implements a policy which is constitutionally infirm, that official may face personal liability for the violations which result from the policy's application."). A plaintiff may therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation. [Footnote omitted]. *See Summum v. City of Ogden*, 297 F.3d 995, 1000 (10th Cir. 2002) ("Under 42 U.S.C. § 1983, Summum must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a person (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia." (internal quotations and citations omitted)). Denying qualified immunity on the basis of such a showing complies with *Iqbal*'s requirement that § 1983 liability only be imposed upon those defendants whose own individual actions cause a constitutional deprivation because it requires plaintiffs prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation.

614 F.3d 1185, 1199-1200 (10th Cir. 2010).

The "Introduction" section of Taylor's Amended Complaint alleges that:

[T]he plaintiff has documentary evidence that Defendant[s] Ballard and Rhodes have personally and directly given the unconstitutional directive that "We do not have to give efforts to temper to those locked up in our Seg units" and further documented evidence that Warden Ballard "utilizes" an unconstitutional "condition" referred to as "Martial Law." In fact, the plaintiff has evidence that the Warden himself actually issued and declared "Martial Law" on all inmates who are locked in administrative segregation or the Quilliams Units. Essentially, Warden Ballard and Major Rhodes have "suspended," [or] at least have "manipulated," all current policies, procedures and guidelines in place that govern the use of force against inmates, issued "Martial Law" and as stated above, implemented his own "protocols" that state "We do not have to give efforts to temper to inmates in the Seg units." Directally [sic; directly] instructing the guards and giving them the go ahead to use force anytime they feel the need to, to use force at their discretion and tacitly authorizing them to violate the use of force

12

>policies in place and follow unwritten "protocol" and policies that clearly violate the plaintiff's and all "inmates locked in the seg units" constitutional rights. Attached hereto as exhibits.

(ECF No. 8 at 2-3). Taylor reiterates his allegations about defendants Ballard and Rhodes' "unwritten directive 'protocols'" and "implementation of Martial Law" in paragraph 22 of the Amended Complaint and asserts that it directly resulted in his injury. (*Id.* at 9, ¶ 22).

Taking Taylor's allegations as true, the undersigned proposes that the presiding District Judge **FIND** that he has alleged specific facts that would allow the court to draw a reasonable inference that the conduct of each of these Supervisory Defendants violated the plaintiff's constitutional rights through the promulgation, implementation and/or continued enforcement of a policy or procedure that exposes inmates to excessive and unnecessary uses of force when such use of force was not justified under the circumstances, and was for malicious or sadistic purposes, rather than simply to restore order. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Taylor has stated plausible claims of violations of his rights under the Eighth Amendment of the United States Constitution, and that his allegations further sufficiently support claims of supervisory liability against defendants Ballard and Rhodes. Furthermore, the undersigned proposes that the presiding District Judge **FIND** that, based upon these allegations, it is premature to make a finding of whether these Supervisory Defendants are entitled to qualified immunity, and that the parties should be permitted to engage in discovery and further proceedings on these matters.

## **RECOMMENDATION**

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY AS MOOT** the Motions to Dismiss filed with respect to the plaintiff's initial Complaint (ECF Nos. 4 and 6). It is further respectfully **RECOMMENDED** that the presiding District Judge **DENY** the Motion to Dismiss Amended Complaint filed by defendants Ballard and Rhodes (ECF No. 11) and leave this matter referred to the undersigned Magistrate Judge for additional proceedings concerning the plaintiff's claims contained in the Amended Complaint.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties and Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

July 22, 2016

Dwane L. Tinsley
United States Magistrate Judge